JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Tiffany Crumedy, appeals from the judgment of the Common Pleas Court, rendered after a jury verdict, finding her guilty of theft and forgery and sentencing her to six months incarceration. For the reasons that follow, we affirm.
 {¶ 2} In June 2003, the Cuyahoga County Grand Jury indicted Crumedy on one count of theft and five counts of forgery. At trial, Frank Zagami, a detective in the Financial Crimes Unit of the Cleveland Police Department, testified that he investigated the events leading to Crumedy's indictment. During the course of his investigation, he learned that an individual named Sherry L. Brown had closed her checking account at Fifth Third Bank in May 2002. Subsequently, on January 6, 2003, Crumedy opened a checking account
 {¶ 3} at National City Bank ("NCB") with a $400 deposit.
 {¶ 4} On January 23 and 24, 2003, seventeen checks totaling $8,638 were cashed at various NCB branches in Cleveland. All of the checks were written on Sherry Brown's closed Fifth Third Bank account; Brown was listed as the payor; Crumedy was listed as the payee, and the checks were endorsed by Crumedy. All of the checks were subsequently returned to NCB by Fifth Third Bank with the notation "account closed." Detective Zagami identified State's Exhibits 3A through 3Q as the original seventeen checks.
 {¶ 5} Christopher Feczko, regional manager of fraud investigations for NCB, testified that when a check is cashed, various numbers imprinted on the back of the check by the teller indicate the date, time, and branch location of the transaction. Accordingly, after determining the dates, times and locations where the seventeen checks were cashed, Feczko obtained NCB's surveillance photographs of the individual who cashed twelve of the seventeen checks. Each of the photographs, which Feczko identified as State's Exhibits 4A through 4L, depicted the same African-American woman wearing a blond wig.
 {¶ 6} After obtaining these photos as part of the case file from NCB, Detective Zagami obtained a copy of Crumedy's driver's license picture through the Bureau of Motor Vehicles and compared it with the surveillance photos. According to Zagami, "it was obvious to me it was Tiffany Crumedy in both photos, in the surveillance photos and in the BMV photo." Observing Crumedy in court, Zagami identified her as the same individual in the photograph he obtained from the Bureau of Motor Vehicles.
 {¶ 7} Zagami also testified that on February 25, Crumedy reported to the police that her purse had been stolen sometime after January 24.
 {¶ 8} On cross-examination, Zagami admitted that he did not ask a handwriting expert to compare Crumedy's signature from her checking account signature card on file at NCB with the signatures on the back of the checks. He also admitted that he did not show Crumedy's driver's license photo to any of the tellers who cashed the bad checks nor did he ask any of the tellers to look at a photo array to identify the individual who had cashed the bad checks.
 {¶ 9} Feczko testified that within three to four weeks after Crumedy opened her checking account with NCB, the bank had lost approximately $8,500 due to the bad checks. Feczko testified further that NCB sent Crumedy a certified letter dated February 14, 2003, in which NCB advised her that she had ten days to make restitution to the bank, or the bank would "take whatever steps were necessary to protect [its] interests." The certified mail receipt indicated that Crumedy received the letter on February 25, 2003, the same day she allegedly reported her purse stolen.
 {¶ 10} Crumedy rested without presenting any evidence, but moved for acquittal pursuant to Crim.R. 29. After the trial court denied her motion, the jury returned a verdict of guilty on both counts and the trial court subsequently sentenced her to six months incarceration.
 {¶ 11} Crumedy appealed, raising seven assignments of error for our review.
 REQUEST FOR CONTINUANCE {¶ 12} After the trial court overruled her motion for acquittal, defense counsel asked for a short continuance of the trial because Christopher Feczko had not brought to court all of the NCB records counsel had subpoenaed. Specifically, counsel stated that in response to his subpoena to the custodian of records at NCB, he had spoken with a woman named Mary, who had informed him that the records indicated that Crumedy had telephoned NCB on January 29, 2003 to report that her purse had been stolen. Defense counsel also told the trial court that he had spoken with Feczko on Friday evening, after jury selection had been completed, and asked whether he would produce that record. Feczko told him only, "whatever I have, I have, and I'll bring them to you Monday morning." On Monday morning, however, defense counsel spoke with Feczko before he testified and learned that Feczko did not have the document.
 {¶ 13} Defense counsel stated that he called Mary after Feczko testified and asked her why the document had not been produced in response to his subpoena. Mary apologized and told defense counsel that she would fax the document to him so Feczko could go back on the stand and identify the document.
 {¶ 14} Defense counsel told the trial judge that he had not asked Feczko about the missing document during his testimony because he did not know anything about the document and, therefore, any questioning about it would have been pointless. Counsel also told the trial judge that he had not brought the matter to the court's attention during Feczko's testimony because he was "too busy worrying about cross-exam." Counsel asked for a short continuance until 9 o'clock the next morning to allow him time to procure the document.
 {¶ 15} The trial court denied counsel's motion, however, finding that when Crumedy reported her purse stolen was not relevant. Crumedy argues that the trial court abused its discretion in denying her motion.
 {¶ 16} "`The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.'"State v. Jones (2001), 91 Ohio St.3d 335, 342, quoting Statev. Unger (1981), 67 Ohio St.2d 65, 67. In evaluating a motion for a continuance, a court should weigh any potential prejudice to the defendant against a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. Id. The court should consider such factors as the length of the delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors, depending on the circumstances of the case. Unger,67 Ohio St.2d at 67-68.
 {¶ 17} Here, the trial court did not abuse its discretion in denying the requested continuance. Although the inconvenience caused by the requested delay would have been minor, we agree with the trial court that the date when Crumedy reported her purse missing is not relevant to the case. Whether she reported it stolen on January 29, as the defense asserted, or February 25, as the State contended, the report was made after the bad checks were cashed. Moreover, the seventeen bad checks were written by Sherry L. Brown, payable from her account at Fifth Third Bank. Defense counsel offered no evidence to demonstrate why Brown's checkbook would have been in Crumedy's purse or that it was, in fact, in her purse when it was allegedly stolen.
 {¶ 18} Furthermore, we are not persuaded that Crumedy did not contribute to the necessity for a delay. Defense counsel could have made arrangements prior to trial to visit Mary at NCB and copy the document. Moreover, counsel admitted that he spoke with Feczko on Friday evening and learned that he likely did not have the document in his file. Rather than relying on Feczko's statement that he would bring to court whatever documents he had, counsel could have spoken with Mary on Monday morning before trial started and asked her to fax the document to him immediately.
 {¶ 19} In light of these circumstances, we find that the trial court did not abuse its discretion in denying Crumedy's motion for a continuance.
 {¶ 20} Appellant's first assignment of error is overruled.
 SENTENCING {¶ 21} The trial court sentenced Crumedy to six months incarceration, to be served concurrently with Case No. CR-437794, in which Crumedy pled guilty to forgery and uttering for attempting to cash a forged check approximately two weeks before the events of this case.
 {¶ 22} The trial court stated:
 {¶ 23} "Ms. Crumedy, it's apparent to this court that you took part in a wide-ranging scheme to defraud various business owners of cash. This was not a one-time exercise on your behalf. I'm going to go so far as to say you were involved in an organized operation, an organized fraud operation. I'm aware that none of the factors are present in this case.
 {¶ 24} "I've considered the seriousness and recidivism factors in your case, find that your — your failure to take responsibility for a crime where you were caught on tape is quite serious. And even though none of the factors are present, I feel that it would be an injustice to give you probation on this case, given the fact that this was an organized operation. Therefore, I am going to sentence you to the Ohio State Reformatory for Women for six months on both cases, give you credit for time served; sentences will be run concurrently."
 {¶ 25} Crumedy contends that the trial court erred in sentencing her to six months incarceration because it failed to find that she was not amenable to community control sanctions.
 {¶ 26} Sentencing of fifth degree non-drug felonies is governed by R.C. 2929.13(B). Pursuant to R.C. 2929.13(B)(2)(a), a term of imprisonment is mandatory if the trial court finds (1) the existence of any of the eight factors set forth in R.C.2929.13(B)(1);[1] (2) after considering the seriousness and recidivism factors set forth in R.C. 2929.12, that a prison term is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11;[2] and (3) the offender is not amenable to community control sanctions.
 {¶ 27} Pursuant to R.C. 2929.13(B)(2)(b), community control is mandatory if the trial court (1) does not find the existence of any of the factors set forth in R.C. 2929.13(B)(1); and (2) finds, after considering the seriousness and recidivism factors set forth in R.C. 2929.12, that community control is consistent with the principles and purposes of sentencing set forth in R.C.2929.11.
 {¶ 28} In cases where the particular combinations of factors set forth in R.C. 2929.13(B)(2)(a) or 2929.13(B)(2)(b) are not found, that is, where neither prison nor community control sanctions are mandated, the judge's sentencing discretion is similar to that for third degree, non-drug felonies under R.C.2929.13(C). State v. Banks (Nov. 20, 1997), Cuyahoga App. No. 72121, citing Katz and Griffin, Ohio Felony Sentencing Law (1996-1997 Edition) 389, Section 6.13; State v. Stanley (Nov. 18, 1998), Meigs App. No. 97CA21.
 {¶ 29} Here, the trial judge specifically noted that none of the factors set forth in R.C. 2929.13(B)(1) were present. That finding is inconsistent, however, with the judge's other finding that "this was an organized operation, an organized fraud operation." R.C. 2929.13(B)(1)(e) identifies as one of the factors mandating a prison sentence whether "the offender committed the offense for hire or as part of an organized criminal activity."
 {¶ 30} Having found that one of the factors set forth in R.C.2929.13(B)(1) was applicable, the trial judge then determined whether a prison term was consistent with the purposes and principles of sentencing set forth in R.C. 2929.11. The trial judge apparently concluded that a prison term was necessary to punish Crumedy, stating that probation would be an "injustice" under these circumstances.
 {¶ 31} Crumedy correctly asserts, however, that he did not consider whether or not she was amenable to community control sanctions. Nevertheless, we find this to be harmless error. If the trial court had found that Crumedy was not amenable to community control sanctions, incarceration would have been mandatory pursuant to R.C. 2929.13(B)(2)(a). If, on the other hand, the trial court had found that she was amenable to community control sanctions, the judge would still have had the discretion to sentence her to prison because, as noted earlier, community control is only mandated where the combination of factors set forth in R.C. 2929.13(B)(2)(b) is met. Here, because one of the factors set forth in R.C. 2929.13(B)(1) applies, community control was not mandatory. Accordingly, the trial court's failure to determine whether Crumedy was amenable to community control sanctions before sentencing her to six months incarceration was harmless error.
 {¶ 32} Appellant's second assignment of error is therefore overruled.
 EVIDENTIARY ISSUES {¶ 33} In her third assignment of error, Crumedy argues that the trial court committed various evidentiary errors that allowed the State to present its case without proper evidence.
 {¶ 34} She first argues that the checks and bank surveillance photos were not properly authenticated. Crumedy did not object to the admission of the checks or the photographs, however, and therefore has waived all but plain error. Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41, 43. Plain error is an obvious error or defect in the trial court proceeding that affects a substantial right. See, generally, State v. Long
(1978), 53 Ohio St.2d 91, 94; see, also, Crim.R. 52(B). "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland (1990), 50 Ohio St.3d 58, 62. We find no such plain error here.
 {¶ 35} Bank investigator Feczko testified that the checks introduced as State's Exhibits 3A through 3Q were the original checks. He identified the maker as Sherry L. Brown and testified that the name "Tiffany Crumedy" was listed as the payee and endorsed on the back of the check. He further identified the branch numbers, teller numbers, transaction numbers, and the date and time of each transaction from the numbers printed on the reverse side of each check, and testified that this information is created on every check when the teller swipes the check when it is negotiated. Fescko further noted that the checks were returned to NCB unpaid because Brown's account had been closed as of May 2002.
 {¶ 36} With respect to the surveillance photos, Feczko explained that closed circuit monitoring systems are installed in most NCB branches. He further explained how the data on the reverse side of each check can be used to obtain the photograph of an individual and how, in this case, he contacted each branch with surveillance cameras, provided it with the information on the reverse side of the checks identified as State's Exhibits 3A through 3Q, and obtained photographs of the individual who had cashed the checks. Feczko testified that the original checks and photographs were part of the case file provided to Detective Zagami by NCB for his investigation. In light of this testimony, we find no error in the admission of the checks and surveillance photographs as they were properly authenticated.
 {¶ 37} Crumedy also objects that Detective Zagami testified that she was the individual on the bank surveillance photographs and on the driver's license photo, even though he did not ever show the driver's license photo to the bank tellers or conduct a photo array. Crumedy's argument goes to the weight of the evidence, however; not its admissibility. Accordingly, we find no error in the admission of Detective Zagami's testimony.
 {¶ 38} Appellant's third assignment of error is overruled.
 SUFFICIENCY OF EVIDENCE {¶ 39} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 40} R.C. 2913.02, regarding theft, provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * without the consent of the owner or person authorized to give consent."
 {¶ 41} R.C. 2913.31, regarding forgery, provides that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * forge any writing so that it purports to be genuine when it is actually spurious * * *."
 {¶ 42} Crumedy contends that the State did not present sufficient evidence to prove that she was the offender in the theft offense. She contends that "even a rudimentary review" of the photographs demonstrates that she was not the person in the bank surveillance photographs and asserts that the State's evidence was deficient because none of the bank tellers identified her through a photo array or from her driver's license picture.
 {¶ 43} She further contends that the State failed to present sufficient evidence that she was the individual who wrote the bad checks. She argues that there was no expert testimony comparing the handwriting from her signature card on file at NCB with that on the checks and then urges this court to independently compare the writing.
 {¶ 44} The question for sufficiency, however, is not whether the evidence is to be believed but whether the evidence, if believed, is sufficient to prove the elements of the crime. Here, viewing the evidence in a light most favorable to the prosecution, we find that the State presented sufficient evidence to demonstrate that Crumedy was the individual who both wrote and cashed the bad checks.
 {¶ 45} Detective Zagami testified that he obtained Crumedy's Social Security number from NCB's file and used that number to obtain her driver's license picture. He testified further that after comparing the driver's license picture to the bank surveillance photos, he determined they were pictures of the same person. He also identified Crumedy in court as the individual in the pictures. Crumedy's driver's license picture and the bank surveillance photos were admitted as exhibits for the jury to review. With respect to the handwriting comparison, Crumedy's signature card, the initial deposit slip completed by Crumedy, and the seventeen bad checks were admitted as exhibits for the jury to view.
 {¶ 46} Construing this evidence in a light most favorable to the prosecution, we find that there was sufficient evidence from which the jury could have concluded that Crumedy both wrote and then attempted to cash the bad checks.
 {¶ 47} Appellant's fourth assignment of error is overruled.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 48} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins (1997), 78 Ohio St.3d 380, 390. When considering an appellant's claim that the conviction is against the weight of the evidence, a reviewing court sits essentially as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." Thompkins, supra at 387, quoting Tibbs v. Florida (1982), 457 U.S. 31, 42. The reviewing court must examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982),70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the fact finder, in resolving conflicts in the evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 49} Crumedy argues, for the same reasons set forth in assignment of error four, that the convictions were against the manifest weight of the evidence because the State failed to prove her identity as the offender. We disagree.
 {¶ 50} Detective Zagami testified regarding how he conducted his investigation and how he procured the photos of Crumedy. He also identified Crumedy as the individual in the pictures. In addition, various items containing Crumedy's handwriting were submitted to the jury for their review. In light of this evidence, the jury could have concluded that the handwriting on the checks was similar to that on the signature card Crumedy signed at NCB when she opened her checking account and that the individual in the bank surveillance photos was Crumedy. After reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the jury lost its way and created such a miscarriage of justice that Crumedy's convictions must be reversed.
 {¶ 51} Appellant's fifth assignment of error is overruled.
 "OTHER ACTS" EVIDENCE {¶ 52} Although Crumedy was indicted only for passing five forged checks, the State presented evidence that she passed seventeen bad checks over the course of January 23 and January 24, 2003. Crumedy argues that she was prejudiced by the admission of evidence regarding the forgery of the other twelve checks, even though she was not indicted regarding those checks, because it allowed the jury to infer from these "other acts" that she "was a bad person who engaged in an ongoing pattern of fraudulent activity."
 {¶ 53} Evid.R. 404(B) states:
 {¶ 54} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 55} Evidence of crimes or other acts is admissible only when it is relevant to one of the matters listed in the rule.State v. DeMarco (1987), 31 Ohio St.3d 191, 194. "The principle underlying Evid.R. 404(B) is that evidence of other acts is simply so prejudicial that to allow it outweighs its value as relevant evidence." State v. Prokos (1993), 91 Ohio App.3d 39,43.
 {¶ 56} Here, evidence of all seventeen instances of forgery were presented to the jury as part of a common scheme or plan. In each of the instances, Crumedy went to a different NCB branch office with a check payable to herself made and signed by Sherry L. Brown, and cashed the check. Each check was in an amount close to $500. In each instance, Crumedy wore a blond wig. All seventeen acts of forgery, including the five for which Crumedy was indicted, occurred in the same two-day period.
 {¶ 57} Evidence that all seventeen checks were cashed was also necessary to prove the theft offense. "Generally, a single act of theft is committed where each act in a series of takings results from a continually larcenous intent, or where there is a single plan or scheme." State v. Alicea (April 10, 1986), Cuyahoga App. No. 50992. Crumedy was indicted on one count of theft in an amount between $5,000 and $100,000, a felony of the fourth degree. In order to prove the amount of the theft, evidence of all seventeen checks had to be presented. Accordingly, the trial court did not err in admitting evidence of all seventeen forged checks.
 {¶ 58} Appellant's sixth assignment of error is overruled.
 JURY QUESTIONS {¶ 59} The lower court file demonstrates that the jury submitted two written questions during deliberations. The jury asked, "Where is the deposit slip for 1/24/03 deposit of $300.00?," to which the judge responded, in writing, "It has not been introduced or admitted into evidence." The jury also asked, "Why are there only 5 checks for less than $500 under five counts of forgery when there's 17 checks from $450-$596?" The judge responded, again in writing, "I can't answer that question." The judge did not read the questions into the record nor does the transcript of proceedings reflect when the exchanges between the judge and jury took place.
 {¶ 60} In her seventh assignment of error, Crumedy argues that it was error for the trial court not to read into the record the questions submitted to it by the jurors during their deliberations. She asserts that she was prejudiced because her counsel was precluded from placing his objections to the judge's answers on the record.
 {¶ 61} This court addressed this issue in Maynor v. Ewings,
Cuyahoga App. No. 83248, 2004-Ohio-5033, at ¶ 20, stating:
 {¶ 62} "In Bostic v. Connor (1988), 37 Ohio St.3d 144, paragraph four of the syllabus, the Ohio Supreme Court held that alleged ex parte communication between a judge and jury is harmless error unless a party can establish that it was prejudiced by the communication. To establish prejudice, `the complaining party must first produce some evidence that a private contact, without full knowledge of the parties, occurred between the judge and jurors which involved substantive matters.' Statev. Jenkins (1984), 15 Ohio St.3d 164, paragraph thirteen of the syllabus. See, also, State v. Schiebel (1990),55 Ohio St.3d 71. As recognized by this court in Orenski v. Zaremba Mgmt. Co.
(June 20, 2002), Cuyahoga App. No. 80402, substantive matters could potentially include `discussions between a judge and a juror of legal issues involved in the case, applicable law, a charge to the jury, or a fact in controversy.' See, also, Statev. Musgrave (Apr. 24, 2000), Knox App. No. 98CA10."
 {¶ 63} Here, even assuming that the judge's ex parte communications with the jury involved substantive matters, Crumedy has failed to demonstrate how she was prejudiced. She has not indicated how her counsel would have objected to the judge's answers to the jury questions or how a different answer would have affected the outcome of the trial. Absent this showing of prejudice, we conclude that the judge's ex parte communications with the jury was harmless error.
 {¶ 64} Appellant's seventh assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J. and Rocco, J., Concur.
[1] These factors are whether:
"(a) In committing the offense, the offender caused physical harm to a person.
"(b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.
"(c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.
"(d) The offender held a public office or position of trust and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.
"(e) The offender committed the offense for hire or as part of an organized criminal activity.
"(f) The offense was a sex offense.
"(g) At the time of the offense, the offender was serving or had previously served a prison term.
"(h) The offender committed the offense while under a community control sanction, on probation, or while released from custody on a bond or personal recognizance.
"(i) The offender committed the offense while in possession of a firearm."
[2] "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A).