[Cite as *State v. Carter*, 2013-Ohio-3754.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee           :           C.A. CASE NO.    25447

v.                               :           T.C. NO.    12CR915

ROBERT A. CARTER                 :           (Criminal appeal from
                                              Common Pleas Court)

    Defendant-Appellant          :

                                       :

. . . . . . . . . .

## **O P I N I O N**

Rendered on the ____30th____ day of ____August____, 2013.

. . . . . . . . . .

APRIL F. CAMPBELL, Atty. Reg. No. 0089541, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

NICHOLAS G. GOUNARIS, Atty. Reg. No. 0064527, 130 W. Second Street, Suite 2000, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

YARBROUGH, J. (by assignment)

## **I. Introduction**

{¶ 1}     Defendant-appellant, Robert Carter, appeals the judgment of the Montgomery County Court of Common Pleas, following a two-day bench trial, wherein the court found appellant guilty of two counts of felonious assault, one count of improperly discharging a firearm at or into a habitation, and one count of discharging a firearm on or near a prohibited premises, all with the attendant firearm specifications.

## A. Facts and Procedural Background

{¶ 2}     The state elicited the following evidence during the two-day bench trial. On March 19, 2012, at around 10:00 p.m., a gray or silver Chevy pulled into the driveway at 711 Cleverly Road, the home of Leon Davis, Jr.   Dawne Jones, who was leaving the house at the time, testified that she stopped and talked to the driver, who she identified as Carter. No other passengers were in the car.   After a brief conversation, Dawne left, and Sam Ford approached the driver's side of the car.   Sam testified that he spoke with Carter, and that Carter requested $20 that he had loaned to Sam earlier.   Sam responded that he did not have the money.   Shortly thereafter, the car left.   Sam testified that, although he did not perceive Carter to be angry or upset, he heard Carter say, "[L]et me go get my gun," as Carter was leaving.   Notably, Carter lived nearby.

{¶ 3}     Sam returned to the front porch where he had been talking with Vanessa Hines and Bridgette Dawson.   A few minutes later, Sam and Vanessa then left to walk over to Vanessa's mother's house a few blocks away.   Bridgette remained sitting on the front porch.   Sam and Vanessa testified that as they were walking, they saw the same car that had left the driveway moments ago coming down the street towards them.   Vanessa testified that she could see that Carter was driving the car and that there were no other passengers.   Sam initially testified that he also could see Carter driving the car, although he later admitted that

he assumed it was Carter because it was the same car.

{¶ 4} The car passed Sam and Vanessa. As it continued driving past 711 Cleverly, gunfire came from the driver's side of the car. Approximately ten rounds were fired at the house. Sam and Vanessa testified that they could see the gunfire. Bridgette also testified that she could see the gunfire, but stood there, frozen. Three of the bullets struck Bridgette, wounding her left chest, left wrist, and right elbow. In addition, several of the bullets entered the house, striking the wall and television. Leon, who was inside the house at the time, heard the shots and fell to the floor. He was not injured.

{¶ 5} At a subsequent interview with the police, Sam and Vanessa separately identified Carter as the shooter from a photo lineup. After Carter was taken into custody, and while the criminal proceedings were pending, Carter made several phone calls from the jail in which he discussed the facts surrounding the incident, and at least on one occasion, offered money if Vanessa would change her testimony or not show up for trial.

{¶ 6} Following the state's presentation of its case, the defense called Carter's nephew, Jamikel, as an alibi witness. Jamikel testified that Carter was at Jamikel's house on the evening of the shooting. Jamikel stated that he went downstairs to get a snack on two occasions, and remembered seeing Carter there watching television both times. The defense also called Carter's mother, Rose Carter. Rose testified that in July after the incident, Vanessa admitted to her that she could not identify Carter and so was not going to testify. Vanessa denied ever having this conversation.

{¶ 7} The trial court found Carter guilty on all counts. At sentencing, the trial court merged the felonious assault counts into the count of discharging a firearm on or near a

prohibited premises. The court further merged all of the firearm specifications into the one specification attached to the count of improperly discharging a firearm at or into a habitation. Ultimately, the court sentenced Carter to eight years in prison on each count, and ordered the sentences to run concurrently to each other, and consecutively to the five-year prison sentence for the firearm specification, for a total prison term of 13 years. The trial court also ordered Carter to pay court costs.

### B. Assignments of Error

{¶ 8} Carter has timely appealed, and now raises two assignments of error:

I. Whether Carter's convictions for Counts I, II, III, and IV, are against the manifest weight of the evidence since the State failed to prove that it was Carter in the car shooting at the house.

II. Whether the trial court erred by imposing court costs without informing Carter that he could have to perform community service if he failed to pay his court costs.

### II. Carter's Convictions Were Not Against
### the Manifest Weight of the Evidence

{¶ 9} In support of his first assignment of error, Carter does not contest that the elements of the crimes were satisfied. Rather, Carter raises the issue of identity, and argues that the trial court's finding that he was the shooter is against the manifest weight of the evidence.

{¶ 10} When reviewing a manifest weight claim,

The court, reviewing the entire record, weighs the evidence and all

reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶ 11}** Because the fact finder has the opportunity to see and hear the witnesses, substantial deference must be extended to its determinations of credibility. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The trier of fact may believe all, some, or none of what a witness says. *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶ 12}** Here, we cannot say that this is the exceptional case where the evidence weighs heavily against the conviction. Vanessa expressly testified that she saw Carter driving the car at the time of the shooting. Several witnesses also testified that Carter was in the driver's seat of the same car while it was parked at 711 Cleverly, moments before the shooting. In addition, Sam testified that he heard Carter say he was going to go get his gun. Finally, Carter's own statements on the phone calls from the jail discussing the incident and offering money if Vanessa will either change her story or not testify is evidence of his consciousness of his guilt. The trial court was in the best position to determine the witnesses' credibility, and reviewing the record as a whole, we conclude that the court did

not lose its way merely because it chose to believe the state's witnesses over those of the defense. Accordingly, Carter's first assignment of error is overruled.

### III. The Trial Court Failed to Notify Carter of the Possibility of Community Service if He Failed to Pay Court Costs

{¶ 13} As his second assignment, Carter argues that the trial court erred by imposing court costs without informing him that he may be required to perform community service if he fails to pay, as required by the version of R.C. 2947.23(A)(1) in effect at the time of his sentencing. The state concedes this error, and our review of the transcript from the sentencing hearing confirms that Carter was not notified of the possible imposition of community service. Accordingly, Carter's second assignment of error is sustained.

{¶ 14} Carter requests that we remand this matter to the trial court for proper imposition of court costs. Recently, however, in similar circumstances we have modified the defendant's sentence to eliminate any possibility that the defendant can be mandated to perform community service in lieu of payment of court costs. *See State v. Haney*, 2d Dist. Montgomery No. 25344, 2013-Ohio-1924, ¶ 21; *State v. Veal*, 2d Dist. Montgomery No. 25253, 2013-Ohio-1577, ¶ 20. Therefore, we modify Carter's sentence to remove the possibility that Carter will be required to perform community service should he fail to pay court costs. As modified, the judgment of the Montgomery County Court of Common Pleas will be affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

(Hon. Stephen A. Yarbrough, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

April F. Campbell
Nicholas G. Gounaris
Hon. Dennis J. Adkins