**[Cite as *State v. Hiler*, 2014-Ohio-137.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

RICHARD HILER

      Defendant-Appellant


Appellate Case No.    25609

Trial Court Case No.   2011-CR-2814


(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 17th day of January, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
       Attorney for Plaintiff-Appellee

JACK HARRISON, Atty. Reg. No. 0005076, P.O. Box 292767, Dayton, Ohio 45429
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}     Defendant-Appellant, Richard Hiler, appeals from his conviction and sentence on Felonious Assault (Deadly Weapon) and Felonious Assault (Serious Harm).   Following a jury verdict of guilty as to both charges, the trial court merged the charges and sentenced Hiler to eight years in prison.

{¶ 2}     Hiler contends that the jury erred in failing to consider the vast amount of the evidence for self-defense.   Hiler further contends that his trial counsel was ineffective in various ways, including failing to pursue a third party allegedly involved in the attack, failing to present additional witnesses, failing to object to admission of evidence, failing to energetically argue for an instruction on the lesser-included offense of Aggravated Assault, and failing to examine Hiler about being intoxicated.   Finally, Hiler argues that the trial court erred in failing to charge the jury on the lesser-included offense of Aggravated Assault.

{¶ 3}     We conclude that the jury verdict is not against the manifest weight of the evidence.   This case does not present the exceptional situation in which the evidence weighs heavily against the conviction for Felonious Assault.   We further conclude that trial counsel did not provide ineffective assistance.   Finally, the trial court did not abuse its discretion in refusing to instruct the jury on the lesser-included offense of Aggravated Assault.   The evidence failed to establish that any alleged provocation was reasonably sufficient to incite Hiler to use deadly force.   Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

**{¶ 4}** Defendant-Appellant, Richard Hiler, and the victim, Mark Sparks, had lived across the street from each other for between five and eight years prior to August 13, 2011. However, the two men were not friends. In fact, a month or two before August 13, they had been involved in a fistfight, from which Sparks emerged the victor. The men were fighting over Hiler's ex-girlfriend, Darcy, who had apparently stayed with Sparks for a few days after she and Hiler broke up.

**{¶ 5}** On August 13, 2011, Hiler had a barbeque at his house, and people were stopping in all day, until around 1:00 a.m. According to Sparks, Hiler was out on his porch a lot that day, taunting Sparks and calling him names. Sparks was on his own porch, drinking beer. In the late afternoon, Sparks went to the house of his friend, Dave Metcalf, who lived nearby. Sparks wanted to enlist Metcalf's help, because he was being threatened by Hiler and Hiler's friends, and felt outnumbered. Metcalf and another friend, John Boy, went back to Sparks' house. At that point, Hiler came across the street, and the men started yelling at each other, exchanging "choice" words. During the altercation, Hiler pulled out a knife and said he was going to "get" Sparks, and was going to gut him like a fish.

**{¶ 6}** After Hiler pulled out the knife, Hiler's daughter, Satilla Villa, jumped in the middle and broke up the fight, telling the men to stop. The parties then went their own way, and Sparks and Metcalf went back to Metcalf's house, where they drank and socialized.

**{¶ 7}** Later that night, when Sparks returned home, Hiler and the people at Hiler's house again began yelling obscenities and screaming at him. Because Sparks thought his life was in jeopardy, he left his house and began walking back to Metcalf's house. It was around 2:30 a.m. People then began chasing him and he ran to a neighbor's house to get help.

**{¶ 8}** Hiler's nephew, Faris Vernon, testified at trial. Vernon indicated that he arrived at Hiler's house at around 1:00 a.m., with a case of beer. Vernon, his cousin, Satilla, and another man then went to a nearby bar called the Band Box. They left to return to Hiler's house at about 2:30 a.m., when the bar closed. As they walked back to the house, they encountered a man and a woman. Satilla took off running and started yelling at the man (subsequently identified as Sparks), saying that Sparks had "smacked" her. After possibly admitting that he had hit Satilla, Sparks began running. Vernon grabbed Satilla and told her they should leave, because Sparks was going to grab friends or a weapon.

**{¶ 9}** When Vernon and Satilla got back to Hiler's house, Satilla started screaming and yelling, "The guy's over there. The guy across the street." Transcript of Proceedings, Volume III, p. 370. At that point, Satilla, Hiler, and two other guys jumped up and ran outside. Vernon went with them. They ran behind the house where Sparks had gone, and Sparks was on the porch of that house, knocking and banging on the door. Satilla was in Sparks's face screaming, "Admit it, Admit it," and Hiler was right behind her. Sparks was steadily beating on the door, screaming for help.

**{¶ 10}** Vernon saw a light come on and a woman coming to the door. At that point, the window shattered, and Vernon started running back to Hiler's house. He stopped and waited for cars, but Satilla just ran across the street. As she did, Vernon looked back and saw Sparks run and hit the grass. After running across the street, Vernon stayed on the porch of Hiler's house. He then saw Hiler crossing the street with a dagger in his hand and blood all up and down him. When he asked Hiler what had happened, Hiler said that Sparks had hit him, and he "got" him. He took this to mean that Hiler had stabbed Sparks.

{¶ 11} According to Sparks, when he ran to his neighbor's house (the Hedricks), he looked back and saw Hiler and Hiler's buddy chasing him. When he got into the Hedricks' yard, the men brandished their knives. When Sparks saw the knife, he turned around and swung, and Hiler stabbed him twice in the abdomen. Sparks started knocking on the Hedricks' door, trying to get help, and Hiler's buddy stabbed him twice in the arm. Because he was not getting any response from the Hedricks, Hiler punched in a little glass pane to get help. He did not get any response, so he ran to Metcalf's house.

{¶ 12} Mrs. Hedricks also testified at trial, and stated that while the altercation was occurring on her porch, she heard Hiler say, "Even your friend's not going to help you," or words to that effect. Transcript of Proceedings, Volume III, p. 420.

{¶ 13} When Metcalf answered his door, Sparks was yelling and screaming, was covered in blood, and was holding his belly. When Metcalf asked what was wrong, Sparks told him that Hiler had stabbed him. Sparks stumbled off the side of the porch, made his way to the backyard, and collapsed. Sparks was in and out of consciousness, and begged Metcalf not to let him die. Metcalf called 911, and an ambulance arrived about 20 to 30 minutes later. The Hedricks had also called 911, to report a break-in.

{¶ 14} In the meantime, Hiler took a shower or washed off at home, put his bloody clothes in the washing machine to wash, and changed into different clothes. Hiler testified that he threw the knife in the kitchen trash can; however, Satilla told a neighbor that she panicked and threw the knife behind a cabinet.

{¶ 15} Ironically, a police officer (Kervin Velez) who had been dispatched to a different call, saw Satilla and two other people running across Third Street at around 2:30 a.m.

Velez recognized Satilla because he had been to her house several times. About fifteen minutes later, Velez received a criminal damaging call for the Hedricks' home, followed the blood trail from Hedricks' house to the Metcalf house, and saw Sparks on the ground. After the evidence technician arrived, Velez relayed information about what he had seen during the earlier call. He then went over to Hiler's house. The police secured the people at Hiler's house, and after obtaining consent to search, found clothes inside the washer that contained what appeared to be blood. The police also found a knife, which was actually not the knife that had been used in the stabbing.

{¶ 16} Hiler, Satilla, Vernon, and others were questioned by the police that morning. Hiler and Satilla gave different stories than what they testified to at trial. During the questioning, Hiler was awake and alert, and answered questions appropriately. He did not appear intoxicated, and did not complain of any injuries or about being in pain from having been in a fight. The police officers did not notice any bruising, or contusions. A detective noticed that Hiler had a large spot of blood on the left side of his temple area, and blood in his fingernails, so pictures were taken. The spot of blood did not appear to be an injury.

{¶ 17} Immediately after the incident, Hiler denied having been in any kind of physical altercation with Sparks. Hiler told the police that the blood on his temple came from a pimple on his nose. Satilla told the police that Sparks had slapped her at around 2:15 or 2:30 a.m. when she was walking home from the Band Box with her cousin. She also said that she was in her father's house at the time of the stabbing (not at the scene.)

{¶ 18} In contrast to these accounts, both Hiler and Satilla told different – and essentially the same – stories at trial. Hiler stated that his dispute with Sparks had been going on

for eight years, rather than a few months. According to Hiler, Sparks had harassed him on a daily basis, and he ignored it. Hiler also said that a few months before the stabbing, Sparks called him out to the middle of Third Street and began beating him up for no reason. Hiler denied being angry with Sparks over his ex-girlfriend, Darcy. In fact, he testified that he was unaware that this fist fight had anything to do with Darcy until months later, when he received his discovery packet from the State.

{¶ 19}  Both Hiler and Satilla denied that Hiler had any confrontation with Sparks during the day on August 13, 2011, or that Hiler had brandished a knife at that time. Instead, they both testified that while they were sitting outside on the porch with their dog, "minding their own business," Sparks came up and asked them to put the dog away so they could fight. Instead of responding, Hiler went inside the house with the dog and left Satilla on the porch with Sparks. Satilla then told Sparks that if he wanted to fight her father, he would have to go through her first. Upon hearing this, Sparks suddenly slapped Satilla and ran across the street.

{¶ 20}  Right after this happened, Satilla went across the street to talk to some people who had seen the incident. Sparks then returned with "a bunch of dudes," and words were exchanged. Satilla claimed that Sparks had admitted at this point, in front of Metcalf, that he had hit her. No further confrontation occurred at this time, and according to both Satilla and Hiler, Hiler was not even present. Instead, he was inside the house, watching *Spongebob* with the grandchildren.

{¶ 21}  Satilla subsequently went in the house and told her father that Sparks had hit her. Although Hiler was upset about this, Satilla told him that it was not that big of a deal, and to let it go.

**{¶ 22}** Later on, Satilla ran into Sparks while coming back from the bar with her cousin. Sparks started yelling at her and was obviously mad about something. Satilla demanded an apology from Sparks, which was apparently not forthcoming, and began backing Sparks across the Hedricks' back yard, onto the porch. At that point, Hiler was inside his house. After hearing arguing, Hiler looked out the front door and saw Satilla and Sparks walking between the houses. Hiler then walked across the street because he did not want his daughter to get hit or to get hurt. He took a knife because he always carried a knife when he had barbeques. He thought he might need the knife to defend himself because Sparks was twice his size.

**{¶ 23}** When Hiler got across the street, he walked between a group of seven or eight kids that were there and got up on the porch of the Hedricks' house. He was standing three or four feet behind his daughter, when Sparks turned and punched glass out of the window. At that point, Satilla and her cousin ran away. All the kids ran away as well. When this happened, Sparks turned toward Hiler and hit him in the head. Hiler saw Sparks pick up something, and saw something glimmery in Sparks' hand. Sparks kept swinging, and Hiler stabbed Sparks once or twice. Hiler testified that Sparks hit him 13 or 14 times, and that he reacted in an attempt to keep Sparks from hitting him. He thought his life was in danger when he was on the porch, but he never told the police this. Hiler claimed he did not tell the police this story the morning of the incident because he was in shock and was having an anxiety attack. He explained that he had joked and laughed with police during his interview to relieve his anxiety.

**{¶ 24}** Sparks sustained severe injuries as a result of the attack, and nearly died. Sparks was in the hospital for 45 days, and was in a rehabilitation facility for a year and a half.

**{¶ 25}** After hearing the evidence, the jury found Hiler guilty as charged, and he was

sentenced, as noted, to eight years in prison.   Hiler appeals from his conviction and sentence.

## II.   Did the Jury Err in Failing to
## Consider Evidence of Self-Defense?

{¶ 26}    Hiler's First Assignment of Error states that:

The Jury Erred in Not Considering the Vast Weight of the Evidence for Self-Defense.

{¶ 27}    Under this assignment of error, Hiler contends that the jury erred in failing to consider the overwhelming evidence of self-defense.   We interpret this as a manifest weight challenge.

{¶ 28}    "When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "   *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541.   "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' "   *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 29}    "[S]elf-defense is an affirmative defense."   *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990).    "To establish self-defense, the defendant must show ' * * *

(1) * * * [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he] has [ sic ] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of * * * force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger. * * * ' " *Id.*, quoting *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

{¶ 30} After reviewing the record, we conclude that Hiler presented testimony, which, if believed by the jury, could have satisfied the elements of self-defense. However, the evidence was disputed, and various testimony contradicted or cast doubt on Hiler's account. Initially, Hiler's account of what occurred was disputed by the victim, Sparks, who testified that he ran away from the people, including Hiler, who were pursuing him, that he was unarmed, and that he attempted to escape his attackers by pounding on the Hedricks' door. Hiler's own nephew testified that Hiler was actively pursuing Sparks, rather than following his daughter to possibly protect her from harm.

{¶ 31} Furthermore, Hiler's actions after the attack are inconsistent with a claim of self-defense. Instead of calling the police and asserting self-defense, Hiler left the scene, went home, showered or washed, and placed his clothes in the washing machine – in an apparent attempt to conceal evidence of his involvement. Hiler also discarded the weapon, and never mentioned to the police that he had been attacked. In fact, he told the police that he had not been involved in any physical confrontation with Sparks. As an additional matter, although Hiler claimed that Sparks hit him 13 or 14 times, he showed no evidence of injury or of bruising or contusions, other than a spot of blood on his left temple that may or may not have been caused by Sparks' attempt to defend himself against Hiler and the other individual who had a knife.

**{¶ 32}** In view of the fact that the jury found Hiler guilty of the charged offenses, the jury apparently decided that the State's witnesses were more credible. We extend substantial deference to a fact finder's determinations of credibility, because "the fact finder has the opportunity to see and hear the witnesses * * * ." (Citation omitted.) *State v. Carter*, 2d Dist. Montgomery No. 25447, 2013-Ohio-3754, ¶ 11. "The trier of fact may believe all, some, or none of what a witness says." *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶ 33}** This case does not present the exceptional situation in which the evidence weighs heavily against the conviction. Accordingly, the First Assignment of Error is overruled.

### III. Did Hiler's Trial Counsel

### Render Ineffective Assistance?

**{¶ 34}** Hiler's Second Assignment of Error states simply "Ineffective Assistance of Counsel." Under this assignment of error, Hiler points to several alleged deficiencies of his trial counsel, including: (1) failure to pursue a third party allegedly involved in the attack; (2) failure to present additional witnesses who were involved; (3) failure to object to admission of evidence of a knife that was not used in the attack: (4) failure to energetically argue for an instruction on the lesser-included offense of aggravated assault; and (5) failure to examine Hiler about being intoxicated.

**{¶ 35}** "In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice." *State v. Matthews,* 189 Ohio App.3d 446, 2010-Ohio-4153, 938 N.E.2d 1099, ¶ 39 (2d Dist.), citing *Strickland v. Washington*,

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance, and to show deficiency, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id.*

{¶ 36}  "The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time." (Citations omitted.) *State v. Jackson*, 2d Dist. Champaign No. 2004-CA-24, 2005-Ohio-6143, ¶ 29. Furthermore, even if we assume that trial counsel's performance was defective, "the defendant must still show that the error had an effect on the judgment. * * * Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at ¶ 30, citing *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

{¶ 37}  Concerning the first alleged area of ineffectiveness, Hiler fails to indicate how the testimony of the other party involved in the attack would have assisted his case. In this regard, we note that Sparks testified that Hiler stabbed him twice in the lower abdomen and that the other assailant stabbed him twice in the arm. Hiler did not dispute that he stabbed Sparks; instead, he claimed self-defense. The fact that another person also stabbed Sparks would not have aided Hiler in establishing this defense.

{¶ 38}  With respect to the alleged failure to present other witnesses, Hiler fails to indicate who these witnesses might be or the relevance of their testimony. If such witnesses exist, the content of their testimony is not apparent in the record. It is well-settled that we

cannot consider matters outside the record during a direct appeal. *See, e.g.*, *State v. Pittman*, 2d Dist. Montgomery No. 25167, 2013-Ohio-962, ¶ 13, citing *State v. Cooperrider*, 4 Ohio St.3d 226, 228-229, 448 N.E.2d 452 (1983). We cannot conclude, on the record before us, that trial counsel was ineffective in failing to present testimony from other witnesses.

{¶ 39} The third alleged area of ineffectiveness involves trial counsel's failure to object to admission of evidence involving a knife that was found in Hiler's house. Even if the failure to object could have been arguably ineffective, we fail to see how any prejudice resulted. The State conceded in closing argument that the knife in question was collected as a potential piece of evidence, but was not the knife that was used. Hiler never disputed using a knife, and, in fact, admitted that he threw his knife in the trash.

{¶ 40} Regarding the fourth area of alleged ineffectiveness, we have reviewed the record thoroughly, and do not agree that trial counsel failed to argue effectively or energetically for an instruction on the lesser-included offense of Aggravated Assault. Trial counsel did argue for the instruction, but the trial court simply disagreed.

{¶ 41} Finally, we see no evidence that trial counsel performed deficiently in failing to examine Hiler about being intoxicated. Hiler, himself, denied being intoxicated, and to challenge him on this would have undermined the testimony of counsel's own client. More importantly, voluntary intoxication is not a defense to any crime in Ohio. *See, e.g., State v. Krueger*, 8th Dist. Cuyahoga No. 93742, 2010-Ohio-3725, ¶ 23, citing *State v. Fox*, 68 Ohio St.2d 53, 428 N.E.2d 410 (1981). *See, also*, R.C. 2901.21(C) (stating that "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense.").

{¶ 42} As a final matter, we note that Hiler has also raised one point that is unclear, i.e., Hiler seems to contend that trial counsel was ineffective in failing to argue that he (Hiler) was attacked by two people, rather than one. However, there is no evidence of any such matter in the record. Hiler's own testimony indicates that Sparks was the only person allegedly attacking him.

{¶ 43} Based on the preceding discussion, the Second Assignment of Error is overruled.

IV.   Did the Trial Court Err in

Failing to Charge the Jury on a Lesser Included Offense?

{¶ 44} Hiler's Third Assignment of Error is as follows:

The Trial Court Erred in Refusing a Charge of the Lesser Included Offense

of Aggravated Assault.

{¶ 45} Under this assignment of error, Hiler contends that the trial court erred in failing to instruct the jury on the lesser-included offense of Aggravated Assault. Hiler contends that he had been subjected to threats by Sparks for years, had been beaten up by Sparks a short time before the stabbing incident, and was having anxiety attacks and was "furious" with Sparks. Hiler argues that these facts, together with the disparity in size of his victim, the slapping of Hiler's daughter, and Sparks' own assault on Hiler, constituted sufficient provocation to require an instruction on Aggravated Assault.

{¶ 46} "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 640

(1990), paragraph two of the syllabus. "[T]he proper standard of review for the reviewing court is whether the judge's refusal to instruct * * * was an abuse of discretion under the facts and circumstances of the case." *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). An abuse of discretion means that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 47} Hiler was charged with Felonious Assault, and Aggravated Assault is a lesser-included offense of that crime. *State v. Thornton*, 2d Dist. Montgomery No. 20652, 2005-Ohio-3744, ¶ 50. In *Thornton*, we noted that:

If a defendant, who is charged with felonious assault, presents sufficient evidence of serious provocation, the trial court must instruct the jury on aggravated assault. *State v. Wong* (1994), 95 Ohio App.3d 39, 641 N.E.2d 1137. In analyzing whether an aggravated assault instruction is appropriate, the trial court must first determine whether based on an objective standard if the alleged provocation was reasonably sufficient to bring on a sudden fit of rage. *State v. Shane* (1992), 63 Ohio St.3d 630, 634, 590 N.E.2d 272. An aggravated assault instruction is only appropriate when the victim has caused serious provocation. Serious provocation is provocation that is "sufficient to arouse the passion of an ordinary person beyond the power of his or her control." *Id.* at 635, 590 N.E.2d 272. Additionally, serious provocation has been described as provocation that is "reasonably sufficient to bring on extreme stress and * * * to incite or to arouse the defendant into using deadly force." *State v. Deem* (1988), 40 Ohio St.3d 205,

533 N.E.2d 294. Classic examples of serious provocation are assault and battery, mutual combat, illegal arrest and discovering a spouse in the act of adultery. (Citations omitted.) *Thornton* at ¶ 50.

**{¶ 48}** "If the objective standard is met, then the court must continue on to determine under a subjective standard whether this defendant was actually, 'under the influence of sudden passion or in a sudden fit of rage.' " *Id.* at ¶ 51, quoting *Shane* at 634. "The emotional and mental state of the defendant and the conditions and circumstances that surround him at the time are only considered during this subjective stage of the analysis." *Id.*

**{¶ 49}** In the case before us, the trial court concluded that Hiler failed to meet either the objective or subjective standard for serious provocation. After examining the record, we find no abuse of discretion, even if we assume that Hiler satisfied the initial prong.

**{¶ 50}** According to Hiler, his daughter did not consider Sparks' slap to be a big deal. Hiler stressed that his daughter had been raised in a family with boys and was used to fighting. He also said the slap did not hurt his daughter.

**{¶ 51}** Later in the evening, when Hiler followed his daughter, Satilla, to the neighbors' porch, he did so because he wanted to make sure she did not get hurt. When Sparks broke the glass out of the window, Hiler was three to four feet behind his daughter, who ran away. At that point, nothing prevented Hiler from leaving the scene. His daughter was no longer in any danger, and he denied animosity toward Sparks based on their prior fight. In fact, Hiler testified that he was backing away when Sparks came at him with a piece of glass. Hiler also indicated that Sparks had not threatened to kill him that night. He did state that he was in fear for his safety when he was on the porch, and that he thought his life was in danger.

{¶ 52}     In *Shane*, the Supreme Court of Ohio stressed that "[t]he provocation must be *reasonably sufficient* to incite the defendant to use deadly force.   For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control."   (Emphasis sic.)   *Shane*, 63 Ohio St.3d at 635, 590 N.E.2d 272.

{¶ 53}     In rejecting the instruction, the trial court relied on several cases, including *State v. Mack*, 82 Ohio St.3d 198, 694 N.E.2d 1328 (1998).   *Mack* involved circumstances similar to those of the case before us, including a past history of threats by the victim, the defendant's desire to protect another party, and the defendant's testimony that he was afraid and was attempting to defend himself.   *Id*. at 198-199.   In rejecting serious provocation, the Supreme Court of Ohio stressed that "past incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off."   (Citations omitted.)   *Id.* at 201.   The court additionally emphasized in *Mack* that "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage."   (Citations omitted).   *Id*. at 202.

{¶ 54}     *State v. Harding*, 2d Dist. Montgomery No. 24062, 2011-Ohio-2823, also involves circumstances similar to the case at hand.   As here, the defendant's actions in *Harding* were motivated by fear and self-defense.   We stressed that under these circumstances, even if the defendant had satisfied the objective prong, he failed to fulfill the subjective prong of the test. *Id.* at   ¶ 44 and 47.

{¶ 55}     Even if we assume the truth of Hiler's testimony, his actions were based on self-defense.   The trial court properly instructed the jury on that point.   However, we do not see evidence that Hiler, subjectively, was actually under the influence of sudden passion or a fit of

rage. The trial court, therefore, did not act unreasonably, arbitrarily, or unconscionably when it denied Hiler's request for an instruction on Aggravated Assault.

{¶ 56} Based on the preceding discussion, the Third Assignment of Error is overruled.


## V. Conclusion

{¶ 57} All of Hiler's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN and DONOVAN, JJ.,   concur.



Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
Jack Harrison
Hon. Steven K. Dankof