[Cite as *State v. Jefferson*, 2021-Ohio-281.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 1-20-01

    v.

TOMMIE L. JEFFERSON, SR.,         O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2018 0247

Judgment Affirmed

Date of Decision: February 1, 2021

APPEARANCES:

    *William T. Cramer* for Appellant

    *Jana E. Emerick* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Tommie L. Jefferson, Sr. ("Jefferson"), appeals the November 26, 2019 judgment of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On June 13, 2018, the Allen County Grand Jury indicted Jefferson with one count of trafficking in cocaine in violation of R.C. 2925.03(A)(1), (C)(4)(g), a first-degree felony. (Doc. No. 1). The count also included a major drug offender specification under R.C. 2941.1410(A). (*Id.*). On July 24, 2018, Jefferson appeared for arraignment and entered pleas of not guilty. (Doc. No. 10).

{¶3} A jury trial was held on November 25-26, 2019. (Doc. No. 130). After deliberations, the jury found Jefferson guilty as charged. (*Id.*). The trial court then proceeded immediately to sentencing and sentenced Jefferson to 11 years in prison. (Doc. No. 131). The trial court filed its judgment entries of conviction and sentence on November 26, 2019. (Doc. Nos. 130, 131).

{¶4} Jefferson filed his notice of appeal on January 6, 2020. (Doc. Nos. 140, 143). He raises one assignment of error for our review.

**Assignment of Error**

**Appellant's conviction for drug trafficking was against the weight of the evidence.**

{¶5} In his assignment of error, Jefferson argues that his trafficking-in-cocaine conviction is against the manifest weight of the evidence.

{¶6} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). "A conviction can be sustained on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991). "[I]n some instances, certain facts can only be

established by circumstantial evidence" and a conviction based thereon "is no less sound than one based on direct evidence." *State v. Smith*, 12th Dist. Butler No. CA2008-03-064, 2009-Ohio-5517, ¶ 80. "If the state 'relies on circumstantial evidence to prove an element of the offense charged, there is no [requirement that the evidence must be] irreconcilable with any reasonable theory of innocence in order to support a conviction[,]' so long as the jury is properly instructed as to the burden of proof, i.e., beyond a reasonable doubt." *State v. Bates*, 6th Dist. Williams No. WM-12-002, 2013-Ohio-1270, ¶ 50, quoting *Jenks* at paragraph one of the syllabus.

{¶7} Jefferson was convicted of one count of trafficking in cocaine. The offense of trafficking in cocaine is codified in R.C. 2925.03(A)(1), which provides that "[n]o person shall knowingly * * * sell or offer to sell a controlled substance or a controlled substance analog." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶8} Jefferson does not dispute the evidence concerning the underlying elements of the trafficking-in-cocaine offense of which he was convicted; rather, he disputes the issue of identity as to the conviction. *See State v. Missler*, 3d Dist.

Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 13. Thus, we will address the weight of the evidence only as it relates to the identity element of the offense. *Id.*, citing *State v. Carter*, 2d Dist. Montgomery No. 25447, 2013-Ohio-3754, ¶ 9-12. "'It is well settled that in order to support a conviction, the evidence must establish beyond a reasonable doubt the identity of the defendant as the person who actually committed the crime at issue.'" *Id.*, quoting *State v. Johnson*, 7th Dist. Jefferson No. 13 JE 5, 2014-Ohio-1226, ¶ 27, citing *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶ 19 and *State v. Lawwill*, 12th Dist. Butler No. CA2007-01-014, 2008-Ohio-3592, ¶ 11. "'[D]irect or circumstantial evidence is sufficient to establish the identity of the accused as the person who committed the crime.'" *Collins* at ¶ 19, quoting *Lawwill* at ¶ 11.

{¶9} At trial, the State offered the testimony of Investigator Trent Kunkleman ("Investigator Kunkleman"), a police officer with the Lima Police Department, who was assigned as an investigator in the drug task force in 2015 and was involved in the drug task force investigation which led to the indictment and arrest of Jefferson on the present charge. (Nov. 25-26, 2019 Tr. at 132-133). According to Investigator Kunkleman, the investigation involved a controlled buy using a confidential informant who Investigator Kunkleman met in the summer of 2015 when the confidential informant was arrested on drug-related offenses. (*Id.* at 133-135). In exchange for his cooperation, Investigator Kunkleman testified that

the confidential informant was offered "case consideration" when the informant's drug-related charges came before the court. (*Id.* at 135). According to Investigator Kunkleman, although the confidential informant was promised "case consideration," there was no specific deal arranged. (*Id.* at 135-136).

{¶10} Investigator Kunkleman testified that the controlled buy involving Jefferson and the confidential informant occurred on November 11, 2015. (*Id.* at 136). Prior to that date, Investigator Kunkleman worked with the confidential informant to establish a plan to purchase four and one-half ounces of cocaine from Jefferson for $5,500. (*Id.* at 138-139). On the evening of November 11, 2015, Investigator Kunkleman and Investigator Dana Sutherland ("Investigator Sutherland") met the confidential informant at a prearranged staging area to prepare for the controlled buy. (*Id.* at 136-137). When the confidential informant arrived at the staging area, he informed the investigators that Jefferson had attempted to increase the price of the cocaine. (*Id.* at 143-144). However, after a recorded conversation between the confidential informant and the person on the other end of the phone, whom the confidential informant identified as Jefferson, the seller again agreed to sell the four and one-half ounces of cocaine to the confidential informant for the previously agreed upon price of $5,500. (*Id.* at 144-149). (*See* State's Ex. 1).

**{¶11}** After determining that the confidential informant did not have any money, weapons, or drugs on his person or in his car, the investigators hooked the confidential informant up to an electronic device that allowed officers to simultaneously record and monitor the activity in the confidential informant's vehicle. (Nov. 25-26, 2019 Tr. at 150-151). Investigator Kunkleman then issued the confidential informant $5,500 in U.S. currency whose serial numbers had previously been photographed and recorded. (*Id.* at 151-152). (*See* State's Ex. 2).

**{¶12}** Then, the confidential informant left the staging area in his vehicle and drove directly to 818 East Third Street, Lima, Ohio ("818 East Third Street") while Investigator Kunkleman and Investigator Sutherland followed approximately three to five seconds behind in an unmarked vehicle. (Nov. 25-26, 2019 Tr. at 153-157). Investigator Kunkleman testified that when the confidential informant arrived at 818 East Third Street, the confidential informant parked on the road directly in front of the house and on the same side of the street that the house was located. (*Id.* 157-158). Investigator Kunkleman testified that as their vehicle, which was driven by Investigator Sutherland, drove past the confidential informant's parked vehicle, he looked over toward the area of 818 East Third Street and observed a black male wearing a tan Carhart-style jacket with a light-colored sweatshirt underneath walking from the direction of the residence toward the confidential informant's parked vehicle. (*Id.* at 158-159). However, because it was dark outside,

Investigator Kunkleman testified that he was not able to positively identify the individual he observed walking toward the confidential informant's parked vehicle. (*Id.* at 157-158).

{¶13} Investigator Kunkleman testified that because of the route his vehicle took, he lost visual sight of the man in the Carhart-style jacket and the confidential informant's vehicle before the man got into the vehicle. (*Id.* at 159). However, as soon as he lost sight of the man in the Carhart-style jacket and the confidential informant's vehicle, Investigator Kunkleman heard someone get into the confidential informant's vehicle, over the electronic monitor. (*Id.* at 159-160). Thereafter, Investigator Kunkleman listened over the electronic monitor as the confidential informant spoke with the individual who had entered his vehicle about the drug transaction for approximately three to four minutes. (*Id.* at 160-161). (*See* State's Ex. 1). Investigator Kunkleman testified that after the conversation ended, an additional officer who was stationed near 818 East Third Street communicated over the police radio that the confidential informant was leaving the area. (Nov. 25-26, 2019 Tr. at 161-162). Investigator Kunkleman maintained constant visual and audio surveillance on the confidential informant as he drove directly from 818 East Third Street to the staging area. (*Id.* at 162-163).

{¶14} A portion of State's Exhibit 1, a recording from the controlled buy on November 11, 2015, was played for the jury. (*Id.* at 164-167). (*See* State's Ex. 1).

The audio recording was consistent with Investigator Kunkleman's description of the events overheard on the electronic monitor on November 11, 2015. (*See* State's Ex. 1). Further, in State's Exhibit 1, the confidential informant refers to the individual who enters his vehicle as "Tom." (State's Ex. 1).

{¶15} According to Investigator Kunkleman, once the confidential informant arrived back at the staging area, the confidential informant immediately gave a law enforcement officer the bag containing the drugs that he had purchased. (Nov. 25-26, 2019 Tr. at 167-169). Investigator Kunkleman testified that when law enforcement officers examined the cocaine they obtained from the controlled buy, they discovered that the amount of cocaine that they received was greater than the four and one-half ounces that they agreed to purchase. (*Id.* at 167-173). (*See* State's Ex. 3). In fact, law enforcement officers quickly determined that they had inadvertently received two separate bricks of cocaine, each of which weighed approximately four and one-half ounces. (Nov. 25-26, 2019 Tr. at 170, 172-173). (*See* State's Ex. 3). The excess cocaine presented a problem for both the investigation and the confidential informant, because the confidential informant only paid for one-half of the cocaine that he received in the controlled buy. (Nov. 25-26, 2019 Tr. at 173-174). Accordingly, the investigators had the option to pay $5,500 for the additional four and one-half ounces of cocaine or to immediately arrest Jefferson and compromise the identity and integrity of the confidential

informant. (*Id.* at 173-174, 206). Investigator Kunkleman testified that his superiors decided to pay another $5,500 for the additional four and one-half ounces of cocaine through a controlled payment facilitated by the confidential informant. (*Id.* at 174). So, Investigator Kunkleman worked with the confidential informant to schedule a controlled payment with Jefferson for the following day. (*Id.*).

{¶16} Accordingly, on November 12, 2015, Investigator Kunkleman met the confidential informant at the staging area to prepare for the controlled payment. (*Id.* at 203). Investigator Kunkleman was assisted by Investigator Andrew Tracey ("Investigator Tracey"), who drove the buy vehicle. (*Id.*). In addition, a number of other law enforcement officers were stationed near 818 East Third Street. (*Id.* at 204). The investigators hooked up the confidential informant to an electronic monitor and then Investigator Kunkleman issued the confidential informant $5,500 in U.S. currency whose serial numbers had previously been photographed and recorded. (*Id.* at 205-207). (*See* State's Ex. 4). Investigator Kunkleman testified that he and Investigator Tracey then followed approximately three to five seconds behind the confidential informant's vehicle as the confidential informant drove directly to 818 East Third Street. (Nov. 25-26, 2019 Tr. at 207-208).

{¶17} When the vehicles arrived at 818 East Third Street, Investigator Kunkleman observed the confidential informant park his vehicle on the road in front of the residence. (*Id.* at 208-209). Investigator Kunkleman testified that as he sat

in the back seat of the vehicle, which was driven by Investigator Tracey, he observed a male emerge from the area of 818 East Third Street and walk out into the roadway to pick up a bag of trash that had blown into the road. (*Id.* at 209). Then, Investigator Kunkleman observed the man carry the bag of trash to the north side of the 800-block of East Third Street, across the street from 818 East Third Street, and onto another pile of trash. (*Id.* at 209-210).

{¶18} Investigator Kunkleman testified that the man was walking back across the street toward 818 East Third Street when the buy vehicle drove past the man and that he was able to get a clear view of the individual. (*Id.* at 208-210). Investigator Kunkleman described the person as a male wearing a red hat and a tan Carhart-style jacket with a lime-green sweatshirt underneath. (*Id.* at 210). Investigator Kunkleman affirmed that as Investigator Tracey drove the vehicle, he looked out the back window of the vehicle and was able to observe the male from "within mere feet." (*Id.*). Investigator Kunkleman testified that the man that he saw in the street near 818 East Third Street was "unequivocally, without a doubt" Jefferson. (*Id.* at 210-211). Additionally, Investigator Kunkleman identified Jefferson on the record as the individual that he observed walking across the street on November 12, 2015. (*Id.* at 211).

{¶19} Investigator Kunkleman stated that he was certain that the man he observed on November 12, 2015 was Jefferson because once the confidential

informant identified Jefferson as a possible target for a controlled buy, Investigator Kunkleman had pulled up a photo of Jefferson on multiple occasions and had provided photographs of Jefferson to the law enforcement officers who were participating in the controlled buy. (*Id.* at 210-211). Further, Investigator Kunkleman stated that the Carhart-style jacket that Jefferson was wearing on November 12, 2015 was the same style and color as the jacket he observed on the unidentified person during the controlled buy the day before. (*Id.* at 211).

{¶20} Investigator Kunkleman stated that, while riding in Investigator Tracey's vehicle, he continued down East Third Street and eventually lost visual contact with Jefferson. (*Id.* at 212). However, immediately after Investigator Kunkleman lost his visual on Jefferson, he heard over the electronic monitor that someone entered the confidential informant's vehicle. (*Id.* at 212-213). Investigator Kunkleman listened to the conversation, which was approximately two minutes long, between the confidential informant and the individual in the vehicle, and he testified that the confidential informant and the individual in the vehicle spoke about the amount of the cocaine that was purchased the previous day. (*Id.*). Once the conversation ended, the individual left the confidential informant's vehicle and Investigator Kunkleman was informed by law enforcement officers stationed nearby that the confidential informant left the area. (*Id.* at 213).

{¶21} Then, a portion of State's Exhibit 5, a recording from the controlled payment on November 12, 2015, was played for the jury. (*Id.* at 215-218). (*See* State's Ex. 5). In State's Exhibit 5, the confidential informant and the drug supplier can be heard discussing the fact that the supplier inadvertently gave the confidential informant twice the amount of cocaine as had been previously agreed upon. (State's Ex. 5).

{¶22} Thereafter, the State introduced State's Exhibits 7 through 17, which Investigator Kunkleman described as a series of photographs depicting events that he observed occurring in front of 818 East Third Street on November 12, 2015. (Nov. 25-26, 2019 Tr. at 220-231). (*See* State's Exs. 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17). In the series of photographs, a man in a tan Carhart-style jacket is depicted coming from the direction of 818 East Third Street and into the street toward a bag of garbage. (Nov. 25-26, 2019 Tr. at 223-228); (State's Exs. 7-15). In one of the photographs, the man has the bag of garbage in his hand as he walks to the opposite side of the street. (Nov. 25-26, 2019 Tr. at 228-229); (State's Ex. 15). The photographs then depict the man back across the street toward 818 East Third Street and toward a red Pontiac vehicle, which Investigator Kunkleman identified as the confidential informant's vehicle. (Nov. 25-26, 2019 Tr. at 225, 230); (State's Exs. 16, 17). Investigator Kunkleman clarified that the individual that is observed in the photographs is the same individual that he observed near the confidential

informant's vehicle on November 12, 2015, and who he identified as Jefferson. (Nov. 25-26, 2019 Tr. at 223-225). Additionally, Investigator Kunkleman stated that although he lost sight of Jefferson before he got into the confidential informant's vehicle, it "physically couldn't have been" anyone other than Jefferson that got into the confidential informant's car because Jefferson was the only person near the car and there was no other person in the vicinity of the vehicle. (*Id.* at 216). Further, Investigator Kunkleman stated that the man depicted in the pictures in the tan Carhart-style jacket is similar, not just in race, but also in height and stature as the person that Investigator Kunkleman observed walking up to the confidential informant's vehicle on the previous day. (*Id.* at 230-231).

{¶23} Investigator Kunkleman testified that, after the confidential informant provided law enforcement with Jefferson's name as an individual involved with the sale of drugs, he searched the Lima Police Department's internal records and was able to associate Jefferson with the address of 818 East Third Street on two separate police reports. (*Id.* at 232). Additionally, Investigator Kunkleman identified State's Exhibits 19 and State's Exhibit 20 as certified copies of the signature slips for "own-recognizance" bonds. (*Id.* at 233-236). (*See* State's Exs. 19, 20). Both of the signature slips were signed by Jefferson and indicate that his address is 818 East Third Street. (Nov. 25-26, 2019 Tr. at 232-236); (State's Exs. 19, 20). Further, State's Exhibit 19 was dated January 22, 2013, approximately two and one-half

years prior to the instant offense, and State's Exhibit 20 was dated February 4, 2016, which is several months after the instant offense.[1] (Nov. 25-26, 2019 Tr. at 233-235); (States Exs. 19, 20)

{¶24} On cross-examination, Investigator Kunkleman stated that the confidential informant in this case was arrested in the summer of 2015 on drug-related charges and that he immediately agreed to begin work as a confidential informant for the drug task force in exchange for case consideration. (Nov. 25-26, 2019 Tr. at 261-265). However, Investigator Kunkleman confirmed there was no formal consideration agreement between the confidential informant and law enforcement officers and that the confidential informant was not compensated monetarily for his assistance. (*Id.* at 262-264, 278). Rather, Investigator Kunkleman reported the work that the confidential informant completed to the prosecutor, who ultimately decides what effect the confidential informant's work will have on his pending case. (*Id.* at 278-280). Investigator Kunkleman recalled that during an interview with the confidential informant, the informant suggested Jefferson as an individual from whom he could purchase drugs. (*Id.* at 265-266). Investigator Kunkleman also stated that this confidential informant was also used as a confidential informant in several other cases. (*Id.* at 277-278). Further, as part of his agreement with law enforcement, the confidential informant was required to

---

[1] Thereafter, at the State's request, the trial court gave the jury a limiting instruction with respect to any potential other-acts evidence implied by the signature slips for the bonds. (Nov. 25-26, 2019 Tr. at 236-237).

testify in the event that any of the controlled buys led to charges that went to trial. (*Id.* at 287-288).

{¶25} Additionally, Investigator Kunkleman confirmed that because it was dark outside during the controlled buy on November 11, 2015, no law enforcement officer clearly saw the face of the person that met with the confidential informant that day. (*Id.* at 267, 275). Investigator Kunkleman further confirmed that although he saw the individual in the tan Carhart-style jacket coming from the general area of 818 East Third Street on November 11 and 12, 2015, he did not actually see anybody come out of or go into that residence. (*Id.* at 273). Additionally, Investigator Kunkleman admitted that his office did not attempt to recover any of the $11,000 of U.S. currency that had exchanged hands during the operation. (*Id.* at 280-281).

{¶26} Investigator Kunkleman testified that he was certain that the man that he saw near the confidential informant's vehicle on November 12, 2015 was Jefferson. (*Id.* at 283-284). In fact, in 2018, after Investigator Kunkleman learned that a warrant had been issued for Jefferson's arrest on the present charges, he happened to see Jefferson at a home improvement store. (*Id.* at 284). At the time, Investigator Kunkleman was off-duty and was running a personal errand; however, he immediately recognized the man as Jefferson. (*Id.*). Accordingly, Investigator

Kunkleman informed law enforcement of Jefferson's location, and Jefferson was arrested on the present charges. (*Id.*).

{¶27} On re-direct examination, Investigator Kunkleman clarified that when he observed Jefferson on November 12, 2015, he was approximately four to five feet away from him. (*Id.* at 289-290). Further, Investigator Kunkleman confirmed that the confidential informant currently has charges pending against him relating to drug activity occurring in summer 2015 and that none of the charges were dropped in exchange for his participation in this case. (*Id.* at 292-293).

{¶28} The confidential informant testified that he was arrested in 2015 on drug-related charges and that he was approached shortly thereafter by Investigator Kunkleman about the possibility of becoming a confidential informant for the drug task force by participating in controlled drug buys. (*Id.* at 298-300). The confidential informant testified that he agreed to assist the drug task force with controlled drug buys in exchange for case consideration on his pending drug-related charges. (*Id.* at 300). Thereafter, the confidential informant assisted the drug task force with multiple controlled buys involving a number of individuals, including Jefferson. (*Id.* at 300-301).

{¶29} The confidential informant testified that he met Jefferson more than ten years before he became involved in the present case, and that he came to know Jefferson "really well" throughout the years. (*Id.* at 301). The confidential

-17-

informant stated that he refers to Jefferson as "Tom" and identified Jefferson in open court as the man that he knows as "Tom." (*Id.* at 301-302). As a result of their relationship, the confidential informant was aware that Jefferson could supply him with drugs. (*Id.* at 302). Accordingly, the confidential informant identified Jefferson to law enforcement as a possible target for a controlled drug buy. (*Id.* at 302-303).

{¶30} Thereafter, the confidential informant described the events of November 11, 2015 in a manner that was consistent with Investigator Kunkleman's previous testimony relating to the same events. (*Id.* at 302-311). Specifically, the confidential informant described the process of arriving at the staging area in his red Pontiac vehicle, having his car and person searched, receiving an electronic monitoring device from Investigator Kunkleman, and receiving $5,500 in U.S. currency to purchase four and one-half ounces of cocaine from Jefferson. (*Id.* at 303-308). The confidential informant testified that when he arrived at Jefferson's house, he purchased a quantity of cocaine from Jefferson. (*Id.* at 310). Further, the confidential informant identified the voices of the two individuals speaking on State's Exhibit 1 as belonging to Jefferson and him. (*Id.* at 314-316). (*See* State's Ex. 1).

{¶31} The confidential informant testified that when he returned to the staging area after the sale, he gave the cocaine to Investigator Kunkleman. (Nov.

25-26, 2019 Tr. at 311, 314). He also confirmed that, shortly thereafter, he learned that he accidentally received approximately twice as much cocaine from Jefferson than was originally agreed upon. (*Id.* at 310-311, 318-319). According to the confidential informant, after learning of the error, Jefferson gave him the option to return the excess cocaine or to purchase it for $5,500. (*Id.* at 311).

{¶32} After speaking to Investigator Kunkleman, the confidential informant arranged to meet Jefferson the following day to deliver a $5,500 payment for the extra cocaine. (*Id.* at 311-312). On November 12, 2015, the confidential informant met law enforcement at the staging area and was searched, connected to an electronic monitoring device, and issued $5,500 to pay for the excess cocaine. (*Id.* at 312-313). The confidential informant testified that he then drove to Jefferson's house and gave Jefferson the $5,500 he received from law enforcement officers. (*Id.* at 313-314, 319-320).

{¶33} The confidential informant reviewed State's Exhibits 12 and 13 and identified the red vehicle visible in the photographs as the vehicle he drove when making controlled drug buys on November 11 and 12, 2015. (*Id.* at 320-321); (State's Exs. 12, 13). The confidential informant also identified Jefferson as the individual in the photographs wearing a tan Carhart-style jacket. (Nov. 25-26, 2019 Tr. at 320-321); (State's Exs. 12, 13). Additionally, the confidential informant

identified Jefferson's house in the photographs. (Nov. 25-26, 2019 Tr. at 320-321); (State's Exs. 12, 13).

{¶34} On cross-examination, the confidential informant confirmed that after his arrest on drug-related charges in 2015, he volunteered to assist law enforcement by taking on the role of confidential informant in exchange for case consideration. (Nov. 25-26, 2019 Tr. at 329-330). The confidential informant stated that in addition to working with law enforcement on the present case, he worked as a confidential informant in other cases as well. (*Id.* at 331-332). The confidential informant also admitted that he gave law enforcement Jefferson's name as an individual from whom he was able to purchase drugs. (*Id.* at 334-335).

{¶35} Jefferson argues that his conviction is against the manifest weight of the evidence because his conviction "depended entirely" on the testimony of the confidential informant. (Appellant's Brief at 7). Jefferson contends that the confidential informant was not a credible witness because he was testifying in exchange for case consideration, and, therefore had a motive to "ensure a conviction * * *." (*Id.* at 7-8). "However, the confidential informant's testimony and credibility were matters for the trier of fact to weigh and determine, and the trier of fact was free to accept or reject any and all of the evidence offered by [Jefferson] and the [S]tate." *State v. Smith*, 193 Ohio App.3d 201, 2011-Ohio-997, ¶ 20, citing *Thompkins*, 78 Ohio St.3d at 387. The jury was "free to believe or disbelieve any

or all of the testimony presented" by the confidential informant at trial. *State v. Crump*, 190 Ohio App.3d 286, 2010-Ohio-5263, ¶ 26 (10th Dist.).

{¶36} Further, "the jury is not precluded from relying on a witness's testimony simply because the witness has a criminal history or a motivation to provide testimony favorable to the prosecution." *State v. Smith*, 3d Dist. Seneca No. 13-19-26, 2020-Ohio-427, ¶ 44, citing *State v. Nitsche*, 8th Dist. Cuyahoga No. 103174, 2016-Ohio-3170, ¶ 44. "Instead, a witness's criminal history, prior drug use, or potential bias are factors that the jury may consider in determining whether to credit the witness's testimony and in assigning weight to the witness's testimony." *Id.*, citing *State v. Price*, 3d Dist. Logan No. 8-13-03, 2013-Ohio-3984, ¶ 23-24. Here, the jury was informed of the agreement between the confidential informant and law enforcement officers, specifically that he assisted law enforcement in his capacity as a confidential informant in exchange for case consideration for his pending drug-related charges. *See State v. Kammeyer*, 3d Dist. Seneca No. 13-19-48, 2020-Ohio-3842, ¶ 51. Accordingly, we cannot conclude that the jury clearly lost its way and created a manifest injustice by finding the confidential informant's testimony credible. *See State v. Cartlidge*, 3d Dist. Seneca No. 13-19-44, 2020-Ohio-3615, ¶ 26 ("In the end, a '[m]ere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest

weight grounds.'"), quoting *State v. Cervantes*, 10th Dist. Franklin No. 18AP-505, 2019-Ohio-1373, ¶ 28.

{¶37} Further, the identification of Jefferson as the individual who sold the confidential informant cocaine did not rest solely upon the testimony of the confidential informant. Rather, Investigator Kunkleman testified to the clothing and general physical description of the individual he observed walking toward the confidential informant's vehicle when the cocaine was delivered on November 11, 2015. Shortly after Investigator Kunkleman lost sight of the individual in the tan Carhart-style jacket walking toward the confidential informant's vehicle, Investigator Kunkleman heard the drug dealer enter the confidential informant's vehicle to execute the drug transaction. Further, in the audio recording of the controlled sale on November 11, 2015, the confidential informant addresses the person selling him drugs as "Tom," which is Jefferson's name.

{¶38} The following day, Investigator Kunkleman saw an individual matching the general description of the drug dealer from the previous day and wearing the same color and style jacket approach the confidential informant's vehicle for the purpose of receiving the additional payment. On this day, however, Investigator Kunkleman got a clear view of the man's face and was able to identify the man as Jefferson. As soon as he lost sight of Jefferson and the informant's vehicle, Investigator Kunkleman heard an individual enter the car to receive the

additional payment. Investigator Kunkleman testified that the individual entering the confidential informant's vehicle had to be Jefferson because there was nobody else in the area. Also corroborating the testimony of the informant was the testimony and documentary evidence suggesting that 818 East Third Street, in front of which the drug transactions occurred, was Jefferson's residence.

**{¶39}** Thus, after weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the trier of fact's credibility determinations, we conclude that the jury did not clearly lose its way and create such a manifest miscarriage of justice that Jefferson's trafficking-in-cocaine conviction must be reversed.

**{¶40}** Accordingly, Jefferson's assignment of error is overruled.

**{¶41}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J., and ZIMMERMAN, J., concur.**

**/jlr**