[Cite as *State v. Jackson*, 2020-Ohio-5224.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                    CASE NO.  1-19-83

      v.

CHAZ JACKSON,                         O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2017 0184

**Judgment Affirmed**

Date of Decision:   November 9, 2020

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Chaz Jackson ("Jackson"), appeals the December 16, 2019 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from the November 21, 2016 shooting death of Ryan VanBuskirk ("VanBuskirk"), which occurred during a drug transaction between VanBuskirk and Jackson, who was accompanied by Rione Gray ("Gray"). The transaction originated when Terry Volbert ("Volbert") received a call from VanBuskirk on November 21, 2016 seeking drugs. (Nov. 5-7, 2019 Tr., Vol. II, at 220, 222). Volbert, who used drugs and frequently purchased drugs from Gray, "called [Gray's] phone and [Jackson] and [Gray] said they had some" drugs so Volbert "set up a deal" for VanBuskirk with Jackson and Gray. (*Id.* at 226). Because VanBuskirk did not know Jackson or Gray, Volbert planned for his girlfriend, Melissa Ream ("Ream"), to accompany VanBuskirk "to show him who was who." (*Id.* at 227-228). VanBuskirk and Ream encountered Jackson and Gray on Catalpa Street in Lima to conduct the drug transaction during which Jackson shot and killed VanBuskirk.

{¶3} On June 15, 2017, the Allen County Grand Jury indicted Jackson on three counts: Count One of involuntary manslaughter in violation of R.C. 2903.04(A), (C), a first-degree felony; Count Two of aggravated robbery in

violation of R.C. 2911.01(A)(1), (C), a first-degree felony; and Count Three of murder in violation of R.C. 2903.02(B), (D), 2929.02(B), an unclassified felony.[1] (Doc. No. 1). The indictment included a firearm specification under R.C. 2941.145(A) as to the counts. (*Id.*). On November 14, 2018, Jackson appeared for arraignment and entered pleas of not guilty. (Doc. No. 11). The State filed a bill of particulars on October 25, 2019. (Doc. No. 190).

{¶4} The case proceeded to a jury trial on November 5-7, 2019. (Doc. No. 204). Prior to the commencement of trial, the State requested that the trial court dismiss Count Two of the indictment, which the trial court granted. (Nov. 5-7, 2019 Tr., Vol. I, at 1-2). (*See also* Doc. No. 190). On November 7, 2019, the jury found Jackson guilty of involuntary manslaughter (the predicate offense being an unindicted drug-trafficking felony) and the firearm specification but not guilty of murder.[2] (Doc. Nos. 202, 203, 204).

{¶5} On December 16, 2019, the trial court sentenced Jackson to 11 years in prison as to the involuntary-manslaughter charge and 3 years in prison as to the firearm specification.[3] (Doc. No. 213). The trial court further ordered that Jackson serve the terms consecutively for an aggregate sentence of 14 years in prison. (*Id.*).

---

[1] On October 24, 2019, the State filed a motion to amend the indictment, which the trial court granted on November 1, 2019. (Doc. Nos. 189, 193).
[2] The trial court filed an amended judgment entry of conviction on December 23, 2019. (Doc. No. 215).
[3] The trial court filed an amended judgment entry of sentence on December 23, 2019. (Doc. No. 216).

{¶6} Jackson filed his notice of appeal on December 23, 2019, and raises three assignments of error for our review. (Doc. No. 217). For ease of our discussion, we will begin by reviewing Jackson's second and third assignments of error together, followed by his first assignment of error.

**Assignment of Error No. II**

**Appellant's Due Process rights were violated by a conviction of involuntary manslaughter that was not supported by sufficient evidence.**

**Assignment of Error No. III**

**Appellant's conviction for involuntary manslaughter was not supported by the weight of the evidence.**

{¶7} In his second and third assignments of error, Jackson argues that his involuntary-manslaughter conviction is based on insufficient evidence and is against the manifest weight of the evidence. Specifically, Jackson disputes the issue of identity as to his involuntary-manslaughter conviction, arguing that someone else committed the offense. That is, Jackson contends that the evidence supporting that he committed the offense is not credible.

*Standard of Review*

{¶8} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Therefore, we address each legal concept individually.

{¶9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶10} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier

of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

**{¶11}** As an initial matter, the record reveals that Jackson failed to renew his Crim.R. 29(A) motion at the conclusion of his case-in-chief or at the conclusion of all the evidence. (*See* Nov. 5-7, 2019 Tr., Vol. II, at 387-395, 400).

> In order to preserve the issue of sufficiency on appeal, this court has held that "[w]hen a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense. In order to preserve a sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, the defendant must renew his Crim.R. 29 motion at the close of all the evidence."

*State v. Hurley*, 3d Dist. Hardin No. 6-13-02, 2014-Ohio-2716, ¶ 37, quoting *State v. Edwards*, 3d Dist. Marion No. 9-03-63, 2004-Ohio-4015, ¶ 6. Based on this

court's precedent, Jackson's failure to renew his Crim.R. 29(A) motion at the conclusion of his case-in-chief or at the conclusion of all evidence waived all but plain error on appeal. *Id.* at ¶ 37, citing *State v. Flory,* 3d Dist. Van Wert No. 15-04-18, 2005-Ohio-2251, citing *Edwards*.

{¶12} "However, '[w]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic.'" *Id.* at ¶ 38, citing *Perrysburg v. Miller*, 153 Ohio App.3d 665, 2003-Ohio-4221, ¶ 57 (6th Dist.), quoting *State v. Brown,* 2d Dist. Montgomery No. 17891, 2000 WL 966161, *8 (July 14, 2000). "Regardless of the standard used, 'a conviction based on legally insufficient evidence constitutes a denial of due process, and constitutes a manifest injustice.'" *Id.*, quoting *Thompkins,* 78 Ohio St.3d at 386-387. Accordingly, we will proceed to determine whether the State presented sufficient evidence to support Jackson's convictions. *See id. See also State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 68, citing *State v. Wimmer*, 3d Dist. Marion No. 9-98-46, 1999 WL 355190, *1 (Mar. 26, 1999).

{¶13} Jackson was convicted of involuntary manslaughter under R.C. 2903.04, which provides, in relevant part, "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A). "The culpable mental state of involuntary manslaughter is supplied by the underlying offense." *State v. Johnson*, 8th Dist.

Cuyahoga No. 94813, 2011-Ohio-1919, ¶ 54. *See State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 11 ("'[T]he criminal intent of involuntary manslaughter is supplied by the criminal intent to do the underlying unlawful act of which the homicide is a consequence.'"), quoting *State v. Potee*, 12th Dist. Clermont No. CA2016-06-045, 2017-Ohio-2926, ¶ 32.

{¶14} The predicate-felony offense in this case is trafficking in drugs under R.C. 2925.03(A)(1), which provides that "[n]o person shall knowingly * * * "[s]ell or offer to sell a controlled substance or a controlled substance analog." Thus, the culpable-mental state for trafficking in drugs requires the defendant to have acted knowingly. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Accordingly, the State was required to prove that Jackson caused VanBuskirk's death as a proximate result of knowingly selling or offering to sell a controlled substance or a controlled substance analog to VanBuskirk.

{¶15} However, Jackson does not dispute the evidence concerning the underlying elements of the involuntary-manslaughter offense of which he was convicted; rather, he disputes only the issue of identity as to the conviction. *See State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 13. *See also State v. Littlejohn*, 8th Dist. Cuyahoga No. 101549, 2015-Ohio-875, ¶ 30. Thus, we will

address only the identity element of the offense. *See Missler* at ¶ 13, citing *State v. Carter*, 2d Dist. Montgomery No. 25447, 2013-Ohio-3754, ¶ 9-12. "'It is well settled that in order to support a conviction, the evidence must establish beyond a reasonable doubt the identity of the defendant as the person who actually committed the crime at issue.'" *Id.*, quoting *State v. Johnson*, 7th Dist. Jefferson No. 13 JE 5, 2014-Ohio-1226, ¶ 27, citing *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶ 19 and *State v. Lawwill*, 12th Dist. Butler No. CA2007-01-014, 2008-Ohio-3592, ¶ 11.

{¶16} In support of his sufficiency-of-the-evidence challenge, Jackson argues that a rational trier of fact could not have found that he was involved in the drug transaction because "there was no physical evidence tying Jackson to the crime scene." (Appellant's Brief at 20). The record belies Jackson's argument. Importantly, the State presented direct evidence that Jackson was the person who committed the offense at issue in this case—namely, two eyewitnesses (Ream and Gray) identified Jackson as the person who shot VanBuskirk during the drug transaction. (*See* Nov. 5-7, 2019 Tr., Vol. II, at 253, 276). (*See also id.* at 342-343). Likewise, Detective Steven J. Stechschulte ("Detective Stechschulte") of the Lima Police Department, who investigated the case, testified that Ream identified Jackson in a photo lineup as the shooter. (*See id.* at 280, 344-345). Further, Gray and Volbert testified to arranging the drug transaction with VanBuskirk and testified to

Jackson's involvement in the drug transaction. (*Id.* at 226-228, 252). (*See also id.* at 337-338). Accordingly, contrary to Jackson's argument on appeal, the State presented direct evidence tying Jackson to the crime scene. Therefore, based on our review of the record, a rational trier of fact could have found that Jackson was the person who committed the offense at issue in this case.

{¶17} Nevertheless, Jackson contends that there is insufficient evidence that he was the person who committed the offense because his "presence was based solely on the testimony of Ream and Gray, neither of whom had any credibility." (Appellant's Brief at 20). Jackson's credibility argument is misplaced. The credibility and weight of the evidence is primarily the role of the trier-of-fact—in this case, the jury. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 106, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. In assessing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses; rather, we determine if any rational trier of fact could have found the essential elements of involuntary manslaughter beyond a reasonable doubt when viewing the evidence in a light most favorable to the prosecution. *Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus; *Jones*, 2013-Ohio-4775, at ¶ 33.

{¶18} Accordingly, viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found, beyond a reasonable doubt that Jackson was the person who caused VanBuskirk's death as a

proximate result of knowingly selling or offering to sell a controlled substance or a controlled substance analog to VanBuskirk. Therefore, Jackson's involuntary-manslaughter conviction is based on sufficient evidence.

{¶19} Having concluded that Jackson's involuntary-manslaughter conviction is based on sufficient evidence, we next address Jackson's argument that his involuntary-manslaughter conviction is against the manifest weight of the evidence.

*Manifest Weight of the Evidence*

{¶20} Similar to his sufficiency-of-the-evidence argument, Jackson argues that the evidence identifying him as the person who shot VanBuskirk during the drug transaction lacks credibility and reliability. In particular, Jackson contends that he "was only tied to the crime scene by Ream and Gray, who lacked any semblance of credibility" because "Ream was a drug addict, a convicted robber, and admitted she would say anything that Volbert told her" and "Gray was candid that he would do anything to benefit himself and cut a deal to testify against Jackson." (Appellant's Brief at 22-23). More specifically, Jackson argues that his convictions are against the manifest weight of the evidence because the trier of fact lost its way in failing to account for the alibi defense presented through the testimony of Keilna Petaway ("Petaway"), who was in a romantic relationship with Jackson at the time of VanBuskirk's shooting death.

{¶21} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984).

{¶22} Notwithstanding Ream's and Gray's weak credibility, the jury also observed Jackson's and Petaway's testimony "and we are mindful of the jury's 'superior first-hand perspective in judging the demeanor and credibility of witnesses.'" *State v. Suffel*, 3d Dist. Paulding No. 11-14-05, 2015-Ohio-222, ¶ 33, quoting *State v. Phillips*, 10th Dist. Franklin No. 14AP-79, 2014-Ohio-5162, ¶ 125, citing *DeHass* at paragraph one of the syllabus. Indeed, based on Petaway's romantic relationship with Jackson, the trier of fact was free to credit or discount Petaway's testimony because the trier of fact is "patently in the best position to gauge the truth." *State v. Parsons*, 3d Dist. Henry No. 7-16-08, 2017-Ohio-1315, ¶ 63, quoting *State v. Smith*, 5th Dist. Licking No. 14 CA 83, 2015-Ohio-1610, ¶ 24, citing *State v. Durbin*, 5th Dist. Holmes No. 13 CA 2, 2013-Ohio-5147, ¶ 53. *See*

*also State v. Mitchell*, 2d Dist. Montgomery No. 20372, 2005-Ohio-912, ¶ 24 (concluding that the trier of fact "was free to credit or discount" the alibi testimony of Mitchell's girlfriend based on their relationship).

{¶23} In other words, even though Petaway and Jackson claimed to have been together on November 21, 2016, the jury was also able to compare Jackson's and Petaway's testimony against the balance of the State's evidence presented at trial, and "it is well within the province of the trier-of-fact to determine [Jackson's and Petaway's] credibility in making those statements including the prerogative to find [Jackson's and Petaway's] denials not to be truthful." *State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 27. For instance, the jury was able to compare Petaway's testimony that she learned that Jackson was a suspect in VanBuskirk's shooting death from Facebook "within a day or so" of November 21, 2016 against Detective Stechschulte's testimony that the Lima Police Department did not post Jackson's name as a suspect in VanBuskirk's murder on Facebook until November 27, 2016. (*See* Nov. 5-7, 2019 Tr., Vol. II, at 374-375, 377, 397). The jury was also able to compare Petaway's and Detective Stechschulte's testimony against Jackson's testimony that he learned that he was a suspect "a few days after his daughter's birthday," which is on November 24. (*See id.* at 382, 386).

{¶24} Moreover, the evidence that we summarized in our sufficiency-of-the-evidence analysis supporting Jackson's conviction is weightier than the evidence

against it, and we cannot say that the evidence weighs heavily against Jackson's conviction. Most significant is the eyewitness testimony of two witnesses as confirmed by Detective Stechschulte, who testified at trial that the evidence that he collected through his investigation does not point to anyone other than Jackson as the person who shot VanBuskirk during the drug transaction. (*See* Nov. 5-7, 2019 Tr., Vol. II, at 361). Accordingly, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that Jackson's involuntary-manslaughter conviction must be reversed and a new trial ordered.

{¶25} Jackson's second and third assignments of error are overruled.

**Assignment of Error No. I**

**The trial court abused its discretion by allowing the prosecution to use evidence of other actions by appellant in violation of Evid.R. 404(B).**

{¶26} In his first assignment of error, Jackson argues that the trial court abused its discretion by admitting evidence under Evid.R. 404(B). In particular, he contends that the trial court improperly admitted evidence (1) that "Jackson's house was a problem house"; (2) that Volbert "previously bought drugs from Jackson"; (3) that Detective Stechschulte "had interacted with Jackson before and knew where he lived" and "had seen Jackson in possession of a firearm"; and (4) of "Facebook photos depicting Jackson with a firearm, holding up gang signs, and displaying cash." (Appellant's Brief at 12-13).

-14-

Case No. 1-19-83

{¶27} "Generally, '[a] trial court is given broad discretion in admitting and excluding evidence, including "other bad acts" evidence." *State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 23, quoting *State v. Williams*, 7th Dist. Jefferson No. 11 JE 7, 2013-Ohio-2314, ¶ 7, citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). However, "[t]he admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law." *State v. Hartman*, ___ Ohio St.3d ___, 2020-Ohio-4440, ¶ 22.

{¶28} Accordingly, this court reviews de novo whether a trial court admitted improper character evidence and applies an abuse-of-discretion standard to evidentiary decisions regarding the admission of other-acts evidence for permissible purposes. *See id.*, citing Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 4.10 (2d Ed.2019) (because "[d]etermining whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion * * *, an appellate court should scrutinize the [trial court's] finding under a de novo standard" of review) and *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 17 (the trial court is precluded by Evid.R. 404(B) from admitting improper character evidence, but it has discretion whether to allow other-acts evidence that is admissible for a permissible purpose). *See also State v. Glenn-*

-15-

*Coulverson*, 10th Dist. Franklin No. 16AP-265, 2017-Ohio-2671, ¶ 24 ("Thus, a reviewing court will not reverse a trial court's evidentiary ruling absent an abuse of discretion that materially prejudices the affected party."), citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001).

{¶29} "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

{¶30} "'Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."'" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). *See also Wendel* at ¶ 21. "'However, there are exceptions to the general rule: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."'" *Bagley* at ¶ 56, quoting *May* at ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *Bagley* at

¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23, citing *State v. Melton*, 11th Dist. Lake No. 2009-L-078, 2010-Ohio-1278, ¶ 78, and citing *State v. Faye*, 3d Dist. Wyandot Nos. 16-99-08 and 16-99-09, 2000 WL 566741, *4 (May 4, 2000). In this case, the other-acts evidence was predominately entered to prove identity.

{¶31} "Other acts can be evidence of identity in two types of situations. First are those situations where other acts 'form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment,' and which are 'inextricably related to the alleged criminal act.'" *State v. Lowe*, 69 Ohio St. 527, 531 (1994), quoting *State v. Curry*, 43 Ohio St.2d 66, 73 (1975).

{¶32} "Other acts may also prove identity by establishing a modus operandi applicable to the crime with which a defendant is charged." *Id.* "'Modus operandi' literally means method of working." *Hartman* at ¶ 37. "'"Other acts" may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense.'" *Lowe* at 531, quoting *State v. Smith*, 49 Ohio St.3d 137, 141 (1990). "Evidence of modus operandi is relevant to prove identity: 'Evidence that the defendant had committed uncharged crimes with the same peculiar modus tends to identify the defendant as the perpetrator of the charged crime.'" *Hartman* at ¶ 37, quoting 1 Imwinkelried, Giannelli, Gilligan,

Lederer & Richter, *Courtroom Criminal Evidence*, Section 907 (6th Ed.2016). *See also Lowe* at 531 ("A certain modus operandi, is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator."). "To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question." *Lowe* at 531. *See also Hartman* at ¶ 37.

{¶33} In *State v. Williams*, the Supreme Court of Ohio set forth the three-step analysis trial courts should conduct in determining whether "other acts" evidence is admissible under Evid.R. 404(B). 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 19-20. "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. *See also Hartman* at ¶ 24. "The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Williams* at ¶ 20. *See also Hartman* at ¶ 29. "The third step is to consider whether

the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Williams* at ¶ 20, citing Evid.R. 403.

**{¶34}** On appeal, Jackson contends that the following evidence constitutes improper "bad acts" evidence: (1) Patrolman Benjamin Thompson's ("Patrolman Thompson") of the Lima Police Department testimony that he was familiar with the residence located at 721 East Third Street —the address at which Jackson resided— because "that was a problem house" for law enforcement; (2) Volbert's testimony that he bought drugs from Jackson; (3) Detective Stechschulte's testimony that he has had prior interactions with Jackson and has "seen Mr. Jackson in possession of a firearm," specifically "in his left hand"; and (4) three Facebook photographs depicting Jackson with a firearm and displaying a gang sign and posing with a large amount of money. (Nov. 5-7, 2019 Tr., Vol. I, at 151, 155); (Nov. 5-7, 2019 Tr., Vol. II, at 242-243, 350-352); (State's Exs. 54, 55, 56). Specifically, Jackson contends that the "other acts" evidence was inadmissible to establish his identity as the person who committed the offense at issue in this case because

> the prior acts in this case do not establish any unique modus operandi, let alone one that ties into the current offense. Living in a problem house, selling drugs, holding guns and cash are all common activities among drug dealers (and drug addicts, for that matter), and do not establish any sort of behavioral fingerprint that would tie Jackson to this shooting.

(Appellant's Brief at 15-16).

**{¶35}** However, even if we assume without deciding that the other acts evidence to which Jackson objects was improperly admitted, Jackson failed to demonstrate that the admission of that evidence prejudiced him. Crim.R. 52(A) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In other words, when Evid.R. 404(B) evidence is improperly admitted at trial, "[t]he question is whether an improper admission affects the defendant's 'substantial rights' so that a new trial is required as a remedy." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 26. *See also id.* at ¶ 25 (noting that "the real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result. If not, the error may be disregarded as harmless error").

**{¶36}** To decide whether a defendant's substantial rights were affected by the improper admission of Evid.R. 404(B) evidence, it must be determined (1) whether the defendant has been prejudiced by the admission of the evidence; (2) whether the admission of the evidence was harmless beyond a reasonable doubt; and (3) whether the remaining evidence (after the improper evidence is excised) provides overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction. *Id.* at ¶ 27-29. Importantly, to determine whether a defendant has suffered any prejudice as a result of the improper admission of Evid.R. 404(B) evidence, "an appellate court must focus on both the impact of the

offending evidence on the verdict and the strength of the remaining evidence." *State v. Stein*, 3d Dist. Logan No. 8-17-39, 2018-Ohio-2621, ¶ 35, citing *Morris* at ¶ 25.

**{¶37}** Here, we cannot say that Jackson was prejudiced by the admission of any of the other acts evidence to which he objects. Most significant, the record reflects that the other acts evidence to which Jackson objects did *not* contribute to his involuntary-manslaughter conviction—that is, the jury acquitted Jackson of the most serious charge that he was facing (murder). *See State v. Johnson*, 2d Dist. Montgomery No. 26055, 2015-Ohio-5491, ¶ 107 (Hall, J., dissenting). In other words, based on our review of the record, there is no indication that the other acts evidence was considered by the jury as substantive evidence.

**{¶38}** Notwithstanding the indication that the jury did not rely on the other acts evidence as substantive evidence, we conclude that even absent the other acts evidence to which Jackson objects, the remaining evidence provides overwhelming evidence of guilt. *See State v. Gordon*, 8th Dist. Cuyahoga No. 106023, 2018-Ohio-2292, ¶ 80. As we summarized in our discussion in Jackson's sufficiency-of-the-evidence and manifest-weight-of-the-evidence assignments of error, the State presented formidable evidence of guilt. *See also See State v. Tackett*, 11th Dist. Ashtabula No. 2018-A-0052, 2019-Ohio-5188, ¶ 109 (Trapp, J., concurring in part and dissenting in part) ("Based on all the other evidence presented at trial extensively detailed in the majority's discussion of the assignments relating to

sufficiency and weight of the evidence, the jury still would have likely found Ms. Tackett guilty of the charged offenses."). Therefore, we conclude the admission of the other acts evidence to which Jackson objects was harmless beyond a reasonable doubt.

**{¶39}** For these reasons, Jackson's first assignment of error is overruled.

**{¶40}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**